HENRY KISTER ET AL., APPELLANTS, V. CITY OF HASTINGS
ET AL., APPELLEES.

FILED APRIL 19, 1922.   No. 22054.

Municipal Corporations: STREET IMPROVEMENTS: SPECIAL ASSESSMENTS:
ESTOPPEL. Taxpayers, who in a petition request the mayor and
council to create a paving district, and while the work of con-
structing the paving improvement is in progress have knowledge
that the paving is not being constructed strictly on the estab-
lished grades, as required by ordinance, but stand idly by and do
not protest nor appear before the mayor and council sitting as a
board of equalization, are estopped and cannot maintain a suit
in equity to enjoin the collection of special assessments levied to
pay the cost of the improvement.

APPEAL from the district court for Adams county:
WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*J. E. Willits,* for appellants.

*Bruckman & Paulson, contra.*

Heard before MORRISSEY, C. J., ALDRICH, ROSE and
FLANSBURG, JJ., DICKSON and STAUFFER, District Judges.

STAUFFER, District Judge.

This is an action to enjoin the collection of special as-
sessments levied to pay the cost of paving improvement in
paving district No. 93, city of Hastings, Nebraska. Twenty-
six property owners within the paving district are named
as plaintiffs. The city of Hastings, the mayor, councilmen,
city clerk, city treasurer, county clerk, and the county
treasurer of Adams county, Nebraska, are parties defend-
ant. The district court dismissed the action. Plaintiffs
appeal.

The plaintiffs and others petitioned the mayor and coun-
cil to create a paving district. The district was regularly
created. None of the property owners within the district
protested. The paving ordinance provided that "Paving
district No. 93 * * * be and the same is hereby ordered
paved and curbed to the established grade."

The city engineers set stakes preparatory to the actual work of paving. Certain property owners in the district found fault and some of the stakes were changed. Thereupon various other property owners protested. An informal meeting of mayor, council and property owners was held. The matter was compromised by changing the position of some of the stakes. The work proceeded. Residents of the east end of the district then employed an engineer. He made a survey and reported variations from the established grades. The people from the east end again made objections to the mayor and council. They filed a written protest objecting to the grades and asked that the project be constructed on established grades. They did not claim their property would be damaged or that they would in any manner be inconvenienced. About $12,000 of work, grading and curbing had been done. The mayor and council proceeded to complete the work. Notice was then given that the mayor and council would sit as a board of equalization to assess benefits. The board sat and made a levy and special assessment against the property within the district. The plaintiffs did not appear at this meeting.

The variations from the established grade were necessary to take care of drainage. Hastings has no established system of storm sewers, drainage being provided by surface drainage. The elevations of the paving and curbing vary from the established grade from a few inches to 2½ feet. The removal of extra earth increased the cost of paving. The exact amount of the added cost could have been accurately ascertained.

The plaintiffs insist that, in varying from the established grade, ordinance No. 713 was not followed, and that the grades in this district were changed without complying with section 4914, Rev. St. 1913, and that, as a result thereof, the levy and special assessment are void, and, being void, a court of equity should enjoin the collection thereof.

Section 4914, Rev. St. 1913, provides the only manner in which grades can be established in cities the size of Hastings. Plaintiffs contend that defendants have changed

the grades in constructing the paving. As a matter of fact, the established grades of the city of Hastings have never been changed. In constructing the improvement the established grade has been varied from. This does not, in effect, change the grade. Varying from a grade established by ordinance does not change the grade. And we hold that the variation from the established grade in the instant case did not operate as a change of grade.

"The establishment of a grade means the passing of an ordinance, or other legislative action of the council of the city, prescribing and fixing grade lines to which the surface shall be brought when the streets shall be improved." *Kepple v. City of Keokuk*, 61 Ia. 653.

"The plaintiffs claim that the alteration in the surface of the street was a change in the established grade, and was unlawful, because no offer has been made to compensate them for their damages consequent upon the change of grade. We think there was no change of grade. While it is true that the surface of the street at the curb is a few inches lower than it was before the improvement, the new curb is on the same level as the old, and some of the plaintiffs testify, and the evidence altogether is to the effect, that the change is no injury to the property of the plaintiffs. Indeed, the preponderance of the evidence is that the change in the surface of the street is a positive benefit to the abutting property." *Coates v. City of Dubuque*, 68 Ia. 550.

A strict and literal compliance with ordinances and contracts permitting and prescribing the manner in which the public street improvement is to be made is not required as a condition to the acceptance of the work by the city, or to the validity of the tax bill for the cost thereof charged against the property of individuals.

"The fact that some changes are made in the character of the improvement from that required in the ordinance providing for the same is no defense to a special assessment to pay for the same. This objection, if tenable, is to be availed of by injunction before the work is com-

pleted." *Ricketts v. Village of Hyde Park,* 86 Ill. 110.

The variation from the established grade in making the permanent street improvement, not being substantial, was not a jurisdictional defect, so as to entitle a property owner to enjoin the assessment therefor. It was only an irregularity of which complaint should have been made before the city council and an appeal taken from its ruling if it was adverse. See *Shaver v. Turner Improvement Co.,* 155 Ia. 492.

"A special assessment will not be enjoined because the improvement is not made in conformity with the provisions of the ordinance, the remedy being by mandamus." *Lyman v. City of Chicago,* 211 Ill. 209.

In this particular instance the mayor and council had jurisdiction to make the improvement. Immaterial variations from the provisions of the ordinance, contract and specifications, and other similar irregularities in the performance of the work, will not oust the mayor and council of jurisdiction and therefore render void the levy of a special assessment. *Wilson v. City of Auburn,* 27 Neb. 435; *Dubbert v. City of Cedar Falls,* 149 Ia. 489; *Robinson v. City of Milwaukee,* 61 Wis. 585.

Section 4931, Rev. St. 1913, applicable to cities of the size of Hastings, provides: "No court shall entertain any complaint that the party was authorized to make and did not make to the city council, sitting as a board of equalization, nor any complaint not specified in said notice fully enough to advise the city of the exact nature thereof, nor any complaint that does not go to the ground work, equity and justness of such tax."

The failure of the property owner to file objections to an assessment because of defects in the execution of the work within the time noted in the published notice of hearing will estop him from raising the question thereafter. *New Whatcom v. Bellingham Bay Improvement Co.,* 16 Wash. 131.

Taxpayers, who in a petition request the mayor and council to create a paving district, and while the work of

constructing the paving improvement is in progress have knowledge that the paving is not being constructed strictly on the established grades, as required by ordinance, and do not protest nor appear before the mayor and council sitting as a board of equalization, are estopped and cannot maintain a suit in equity to enjoin the collection of special assessments levied to pay the cost of the improvement. *Darst v. Griffin,* 31 Neb. 668. See, also, *Moore v. City of Yonkers,* 235 Fed. 485; *Partee v. Cleveland Trinidad Paving Co.,* 172 Pac. (Okla.) 945; *Damron v. City of Huntington,* 82 W. Va. 401.

We are of the opinion that there was a substantial compliance with the ordinance. It was an irregularity, to be sure, for the city engineer to vary from the established grades. But, under the existing conditions, it was an irregularity going to the manner in which the work was performed. It did not go to the jurisdiction of the mayor and council to do the work, and did not invalidate any levy of special assessments. The plaintiffs requested the mayor and council to create the paving district and knew that the paving was not being constructed strictly on the established grades. Not having brought mandamus proceedings nor injunction proceedings, and not having appeared before the board of equalization, they are estopped to come into a court of equity and question the validity of the levy and special assessment.

"Streets are to be laid out, graded, paved, and lighted. The constabulary must be maintained to enforce peace and preserve order. Sewerage systems and water supplies must be provided. No one is entitled to enjoy these advantages, and to be permitted to successfully contend that the laws, ordinances, and resolutions under which such benefits and advantages are created, regulated, and controlled are invalid, and thereby escape the resultant burdens. The citizen of the modern municipality and property owner thereof take notice of such necessities. He owes his personal service to maintain order and promote the public good in his municipality, just as he owes to the nation his service

to protect against hostile encroachments and invasion." *Kerker v. Bocher*, 20 Okla. 729. See, also, *City of Bartlesville v. Holm*, 40 Okla. 467.

The decision of the lower court is right, and it is

AFFIRMED.