SAMUEL W. MCCLARY ET AL., APPELLEES, v. COUNTY OF DODGE, APPELLANT.

126 N. W. 2d 849

Filed March 13, 1964.   No. 35585.

A. C. Sidner, for appellants.

Richards, Yost & Schafersman, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action to recover a void special assessment levied in connection with the construction of a drainage project in Dodge County, Nebraska, known as the Rawhide Ditch project, under Chapter 31, article 1, R. R. S. 1943.

The plaintiffs own a 124-acre tract of land in Dodge County. In order to construct the drainage project, Dodge County paid the plaintiffs $3,045 for an 80-foot right-of-way across the plaintiffs' land. The amount paid represented damages for 2.24 acres taken for the easement and severance damages to 6.46 acres.

After the drainage project had been completed a special assessment in the amount of $1,989.39 was levied against the plaintiffs' property. In subsequent litigation all of the special assessments levied were adjudged to be void. The county board then attempted to reassess the property benefited by the construction of the drainage project and a special assessment in the amount of $1,989.39 was again levied against the plaintiffs' property. The plaintiffs paid this assessment to the county treasurer on September 21, 1957. Thereafter, the special assessments levied pursuant to the reassessment were adjudged to be void, and that judgment was affirmed by this court. Shanahan v. Johnson, 170 Neb. 399, 102 N. W. 2d 858.

On May 17, 1960, and within 30 days after the entry of the final judgment declaring the assessment void, the plaintiffs filed a claim with the county board for a refund of the assessment. The claim was filed under section 77-1736.04, R. R. S. 1943, which provides in part as follows: "That if, by judgment or final order of any court of competent jurisdiction in this state, in an action not pending on appeal or error it has been or shall be adjudged and determined that any taxes or assessment or any part thereof was illegal and such judgment or order has not been made or shall not be made in time to prevent the collection or payment of such tax

or assessment, then such tax or assessment or such part thereof as shall, at the time of such final judgment or order, be then unexpended and in the possession of the officer collecting the same, the same shall be repaid and refunded to the person paying such tax or assessment by the officer having the same in his possession. Where the levy or assessment so declared illegal is applicable either throughout the state or in taxing districts beyond the geographic jurisdiction of the court making such declaration of illegality then, for the purpose of this section, a judgment or final order shall mean a judgment or final order of the Supreme Court. If the tax or assessment has been distributed by the collecting officer, then the person claiming a refund shall file a claim with the county board for such refund within thirty days after the final judgment is entered declaring such taxes as illegal or within thirty days after June 15, 1955, whichever is the later. If such refund is found to be legal and valid, the county board shall certify the claim to the collecting officer, who shall pay the same from funds in his possession belonging to the taxing districts to the extent that such taxing districts profited from the overpayment of taxes by the claimant; * * *."

The plaintiffs' claim for a refund of the assessment was disallowed and the plaintiffs then perfected an appeal to the district court. The district court sustained the plaintiffs' motion for summary judgment. The defendant county appeals from that judgment.

The principal assignments of error relate to the contention of the defendant that it is entitled to set off the damages paid to the plaintiffs against the claim for a refund of the special assessment and that the plaintiffs are not entitled to a judgment against the county for the amount of the special assessment.

The defendant's contention that it is entitled to set off the amount of the damages paid to the plaintiffs against their claim for a refund of the assessment is based upon a theory that the plaintiffs "profited" from

the construction of the project because the amount of damages paid to them exceeded the amount of the special assessment. The theory ignores the difference between damages and special benefits resulting from the construction of such an improvement.

The distinction between the damages that the plaintiffs sustained and the special benefits which resulted from the construction of the drainage project was pointed out in Gutschow v. Washington County, 74 Neb. 794, 105 N. W. 548, in which this court said: "The apportionment of the cost of the ditch to each landowner is an exercise of the power to tax, but the taking of his property and the ascertainment of the damages he may suffer thereby is an exercise of the power of eminent domain. The statute makes no provision for the deduction of damages from the amount assessed against the land as special benefits, but the method provided is that the county authorities shall establish the apportionment according to benefits first, and afterwards examine claims for damages and allow compensation therefor. No method is provided for offsetting one against the other."

The plaintiffs' right to damages does not in any way depend upon whether their land was benefited by the drainage project. The right to damages exists because the defendant acquired an easement across their property. As a consequence thereof, the plaintiffs were entitled to recover their damages from the defendant. Morris v. Washington County, 72 Neb. 174, 100 N. W. 144. The right to damages and the amount thereof were determined before this action was commenced and are not an issue in this case.

The construction of the drainage project resulted in special benefits to the plaintiffs' land. The fact that special benefits did accrue, or the amount thereof, is not an issue in this case, but special assessments cannot be enforced solely upon the ground that the property involved received special benefits. Cullingham v. City

of Omaha, 143 Neb. 744, 10 N. W. 2d 615; Harmon v. City of Omaha, 53 Neb. 164, 73 N. W. 671. The right to levy and enforce special assessments for the construction of public improvements depends upon strict compliance with the procedures prescribed by statute. The failure of the county board to follow the prescribed statutory procedure resulted in the adjudication that the special assessment levied against the plaintiffs' property is void. If the special assessments were unpaid they could not be collected. The special assessments which have been paid may be recovered under section 77-1736. 04, R. R. S. 1943.

The defendant's contention that the plaintiffs are not entitled to recover the amount of the special assessment from the county is based upon the theory that the county, as distinguished from the county board, has no responsibility in regard to drainage projects constructed under Chapter 31, article 1, R. R. S. 1943. The defendant relies upon Thompson v. Colfax County, 106 Neb. 351, 183 N. W. 571, and Hopper v. Douglas County, 75 Neb. 329, 106 N. W. 330. These cases hold that a county is not liable for the negligence of its officers and employees in the absence of a statute providing otherwise. The rule has no application in this case.

The opinion in the Thompson case contains a statement to the effect that a county board executing a contract for the construction of a drainage project under Chapter 31, article 1, R. R. S. 1943, acts as trustee for the person whose property is chargeable with the cost of the work, and not for the county. A similar statement appears in the opinion in McDonald & Penfield v. Dodge County, 41 Neb. 905, 60 N. W. 366, in which it was said that when a county executes a contract for a drainage ditch under this statute, it is not the party in interest but that it acts in the nature of a trustee for the persons whose property is chargeable with the cost of the work in hand.

So far as this case is concerned, it is not important

to determine the capacity in which the county acts when it collects and receives a void special assessment. A special assessment which was void has been paid, and the Legislature has provided the remedy by which the taxpayer may recover it. The purpose of the special assessment was to reimburse the county for the money expended in the construction of the improvement. Gutschow v. Washington County, *supra*. Since the county had no right to collect the special assessment, the county must refund it.

An important fact here is that all proceedings under Chapter 31, article 1, R. R. S. 1943, are conducted by the county. There is no drainage district that is a separate legal entity in such proceedings. The county is the only governmental or political subdivision which constructs drainage improvements under this statute. Consequently, the county is the taxing district involved within the meaning of section 77-1736.04, R. R. S. 1943. The statute itself contemplates that invalid special assessments shall be recovered from the county. Section 31-124, R. R. S. 1943, provides that in the event of error or irregularity in the proceedings, the assessment shall be paid to the county treasurer and the "amount so paid may be recovered from the county in an action brought for that purpose in case such injunction is made perpetual." See, also, Loup River Public Power Dist. v. County of Platte, 144 Neb. 600, 14 N. W. 2d 210.

The fact that the funds received from the collection of the void special assessments have been expended is not a defense to an action to recover the amount of the assessment. To hold otherwise would defeat the purpose of section 77-1736.04, R. R. S. 1943, and permit the county to have the benefit of the void assessment.

The County Budget Act has no application to a claim filed under section 77-1736.04, R. R. S. 1943. See, § 23-903, R. R. S. 1943; 20 C. J. S., Counties, § 235, p. 1117.

The judgment entered by the trial court included in-

terest at 6 percent from May 7, 1960.  The county is not liable for interest prior to judgment.  See, § 23-1602, R. R. S. 1943; Central Bridge & Constr. Co. v. Saunders County, 106 Neb. 484, 184 N. W. 220.

The judgment of the district court is modified to provide for the allowance of interest at 6 percent from May 23, 1963, and is affirmed as modified.

AFFIRMED AS MODIFIED.